UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SAMUEL BUSH,

               Plaintiff,

v.

                                   Case No. 1:24-cv-947

HEIDI WASHINGTON et al.,

                                   Hon. Hala Y. Jarbou

               Defendants.

_____/

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Sixteen state prisoners initiated this action by filing one complaint on September 6, 2024, and paying the full $405.00 filing fee. In an order (ECF No. 3) entered on September 13, 2024, the Court severed Plaintiffs' claims into 16 related cases and directed each Plaintiff to file an amended complaint in his own case. The above-captioned action is the result of this severance. The Court received Plaintiff's amended complaint (ECF No. 5) on October 10, 2024.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Simon, Bush, Heydens, and Unknown Parties named as Unknown ICF Staff. The Court will also dismiss, for failure to state a claim, the following claims against Defendants Washington, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka: (1) Plaintiff's First Amendment retaliation claims; (2) Plaintiff's Eighth Amendment claim against Defendant Washington; (3) Plaintiff's Fourteenth Amendment due process and equal protection claims; (4) Plaintiff's ADA claims against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka; (5) Plaintiff's PAIMI Act claims; and (6) Plaintiff's RICO Act/embezzlement claims. The following claims remain in the case: (1) Plaintiff's Eighth Amendment claims against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Shafer, Norton, Bookie, and Maranka; and (2) Plaintiff's ADA claim against Defendant Washington.

<u>Discussion</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which Plaintiff complains occurred there. Plaintiff sues the following MDOC administrative personnel: Director Heidi Washington, Deputy Director Jeremy Bush, and Mental Health Rights Specialist Sara Heydens. Plaintiff also sues the following ICF personnel: Warden John Davids; Deputy Warden Unknown Bonn; Assistant Deputy Wardens R. Brokaw and J. Dunigan; Residential Unit Manager Unknown Luther; Prison Counselors Walton L. Smith and Unknown Simon; Psychiatrists Unknown Saad and Unknown Schafer; Psychologists Michelle Norton and Unknown

Bookie; Unit Chief David Maranka; and Unknown Parties referred to as Unknown Staff at ICF. Plaintiff indicates that he is suing Defendants in their official and personal capacities.

Plaintiff's amended complaint concerns conditions that he experienced while incarcerated in the Start Now Unit.[1] Initially, the Court notes that Plaintiff's amended complaint is somewhat unclear as to the date he was placed in the Start Now Unit, as well as to dates of specific incidents. However, it appears that Plaintiff was sent to ICF for the Start Now Program on January 6, 2023, and spent more than seven days in temporary segregation due to lack of bed space in the Start Now Unit. (Am. Compl., ECF No. 5, PageID.113.) Plaintiff alleges that he arrived in the Start Now Unit on March 23, 2024[2] (*Id*., PageID.110) and continues to reside there.

Plaintiff alleges that on January 6, 2023, and December 7, 2023, he was deprived of basic necessities such as toothpaste, deodorant, soap, and over-the-counter medications as a result of being deprived of Secure Pak access. (*Id.*, PageID.110–112.) Plaintiff states that he does not have funds to buy these items and that friends and family order Secure Paks for him. (*Id.*) Plaintiff asserts that prisoners who are not in the Start Now Unit are able to receive Secure Paks and that the denial of such access to prisoners who are in the Start Now program violates Plaintiff's right to equal protection. (*Id.*)

---

[1] The mission statement for the MDOC Start Units reads as follows: "To provide a secure general population alternative to administrative segregation while providing programming and other structured and unstructured out of cell activities based upon the prisoner's positive adjustment, with the goal of reintegration into traditional general population." *See, e.g.*, *Randall v. Washington*, No. 1:24-cv-344, 2024 WL 3158258, at *2 (W.D. Mich. June 25, 2024); *Miller v. Davids*, No. 1:20-cv-108, 2022 WL 329844, at *9 (W.D. Mich. Jan. 6, 2022).

[2] It appears that Plaintiff may have misstated the date he was placed in the Start Unit since his allegations address conditions in the Start Unit in 2023.

Plaintiff states that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka are the Start Program Coordinators and that he notified each of them of the unconstitutional conditions on March 22, 2023, and December 10, 2023. (*Id.*, PageID.110–113.) Plaintiff states that he was held in segregation for more than seven days (nearly two years) and because he is mentally ill, he experienced increased depression, anxiety, sleep problems, paranoia, nightmares, memory loss, anger, thoughts, suicidal ideation, and decompensation. (*Id.*) Plaintiff also asserts that he suffered from weight loss and delirium from engaging in hunger strikes to protest his placement in the Start program. (*Id.*, PageID.113.)

Plaintiff claims to have been diagnosed with several mental disorders and states that he was "targeted" for the Start Now program due to mental illness, which violates the ADA and PAIMI (Protection and Advocacy for Individuals with Mental Illness). (*Id.*) Plaintiff also believes that he was placed in the Start Now Program in retaliation for filing grievances. (*Id.*, PageID.114.)

Plaintiff claims that the "Start Program" is the same program as the "SHU" program, which was outlawed in California and Indiana, with slight modifications, and is falsely portrayed as a mental health program in order to receive "additional public funds and funds from philanthropist organizations." (*Id.*) Plaintiff states that conditions in the program include management according to segregation standards, with minor store and J-Pay privileges in certain stages of the program. (*Id.*) Plaintiff asserts that there are no programs provided in the Start Unit that he could not receive in the general population. (*Id.*)

Plaintiff goes on to state that he has been prescribed "Depacot, Effexer, Cogiten, and Xypo for the purpose of subsiding mental health symptoms which persuade acts of physical engagement." (*Id.*) Plaintiff has a history "of being treated for mental illness." (*Id.*)

Plaintiff contends that the Start Now program is unconstitutional because it "denies religious services, clean environment, law library access, . . . exaggerate[s] programming[,] and create[s] mental illnesses." (*Id.*, PageID.115.) Plaintiff claims that inmates in the program are "treated sadistically and maliciously under the belief [they] are too mentally ill to navigate through the courts." (*Id.*) Plaintiff "is not allowed to clean his cell properly and sometimes not at all." (*Id.*, PageID.116.) He contends that he must be escorted to the shower and yard cages in handcuffs, and "is fed in his filthy cell." (*Id.*) Plaintiff is not allowed to go to the gym for exercise. (*Id.*) He "is required to attend SCC reviews monthly like all other [administrative segregation] prisoners." (*Id.*) He suggests that the Start Now program "is merely a front to hold Plaintiff in segregation indefinitely." (*Id.*)

Plaintiff goes on to allege that the groups in the Start Now unit do not equate to mental health treatment. (*Id.*, PageID.119.) He avers that he needs Dialectical Behavior Therapy (DBT), as well as Cognitive Behavioral Therapy (CBT). (*Id.*) Plaintiff alleges that "[t]reatment plans are not adjusted or revised to address ongoing and worsening symptoms." (*Id.*) He claims that he is "still being held in the program after receiving a Certificate of Completion." (*Id.*)

According to Plaintiff, "[t]he 30-day reviews are ineffectual because of insufficient mental health staff and because of the circumstances on the unit." (*Id.*) Specifically, Plaintiff alleges that there is a lack of privacy where prisoners can communicate candidly with medical staff. (*Id.*) Plaintiff goes on to state that "the obtainment of information within a prison can be used to make

a mentally ill prisoner more valuable in their relations with both custody staff and other inmates."
(*Id*.)

Based upon the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.120–122.) He also asserts violations of the Americans with Disabilities Act (ADA), the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, and the Racketeer Influenced and Corrupt Organizations (RICO) Act. (*Id*.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.123–128.)

## II.    Request for Class Certification and Appointment of Counsel

Plaintiff requests class certification and appointment of counsel under Rule 23 of the Federal Rules of Civil Procedure. (*Id.*, PageID.128.)

The purposes of class action suits are judicial economy and the opportunity to bring claims that would not be brought absent the class action because it might not be economically feasible to bring them as individual claims. *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 650 (6th Cir. 2006). Federal Rule of Civil Procedure 23, which governs class certification, provides that:

> One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder . . . is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four prerequisites for class certification are respectively referred to as "numerosity, commonality, typicality, and adequacy of representation." *Shady Grove Orthopedic*

7

*Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006).

Thus, for a case to proceed as a class action, the Court must be satisfied on the grounds enumerated above, including the adequacy of class representation. *See* Fed. R. Civ. P. 23(a)(4). Plaintiff bears the burden of establishing the right to class certification. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996).

It is well established that *pro se* litigants are "inadequate class representatives." *Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citations omitted); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (recognizing that "[g]enerally pro se prisoners cannot adequately represent a class" (citing *Fymbo v. State Farm & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000))); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (recognizing that "[p]ro se prisoners generally may not bring class action lawsuits concerning prison conditions" (citing *Dean v. Blanchard*, 865 F.2d 257 (6th Cir. 1988) (table); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975))); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001) (concluding that "pro se prisoners are not able to represent fairly [a] class" (citing *Fymbo*, 213 F.3d at 1321; *Oxendine,* 509 F.2d at 1407)); *Marr v. Michigan*, No. 95-1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996) (noting that "an imprisoned litigant who is not represented by counsel may not represent a class of inmates because the prisoner cannot adequately represent the interests of the class" (citing *Oxendine*, 509 F.2d at 1407)). Because Plaintiff is an incarcerated *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Accordingly, his request for class certification will be denied.

Nor is Plaintiff entitled to the appointment of counsel at this point in the litigation. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v.*

*Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–

05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's

discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist.

*Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.

In determining whether to exercise its discretion, the Court should consider the complexity of the

issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action

without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these

factors and determines that, at this stage of the case, the assistance of counsel does not appear

necessary to the proper presentation of Plaintiff's position.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

9

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Defendant Simon

Plaintiff lists Defendant Simon as a defendant, but makes no allegations against Defendant Simon anywhere in his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing

the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at \*2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at \*1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Simon in the body of his complaint. His allegations fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Therefore, Plaintiff has failed to state a clam upon which relief may be granted against Defendant Simon.

### 2.    First Amendment

Plaintiff contends that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka violated his First Amendment rights "by placing Plaintiff in and holding him in the SHU (Special Housing Unit) Start Program segregation as direct retaliation for grievances [and] litigating against MDOC employees." (Am. Compl., ECF No. 5, PageID.121.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove

that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). However, "retaliation" is easy to allege and it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff does nothing more than use the word retaliation in his complaint. Plaintiff alleges no *facts* indicating that any of the named Defendants were aware of his grievances and that they continued to hold him in the Start Now unit solely because of those grievances. In short, Plaintiff has not presented any facts to support his conclusory assertion that his placement in the Start Now unit was motivated by Plaintiff's exercise of his First Amendment rights. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claims.

### 3.    Eighth Amendment

Plaintiff also suggests that his placement and confinement in the Start Now unit violates his Eighth Amendment rights. (Am. Compl., ECF No. 8, PageID.120.) Specifically, Plaintiff contends that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka violated his Eighth Amendment rights by subjecting him to prolonged solitary confinement, depriving him of mental health treatment, depriving him of clean living conditions, and subjecting him to "extreme noise [and] psychological torture." (*Id.*) He also avers that Defendant Unknown Parties named as Unknown ICF Staff violated his Eighth Amendment rights by "depriving [Plaintiff] of access to basic necessities when blocking Secure Pak access." (*Id.*)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Further, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, not "every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim regarding the conditions of confinement, the prisoner must show that he faced a sufficiently serious risk to his health or

safety and that Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Placement in and Continued Detention in the Start Now Program

In his amended complaint, Plaintiff contends that the Start Now program is an unconstitutional solitary confinement/punishment targeting mentally ill inmates like himself. Plaintiff contends that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka were responsible for his placement in the ICF Start Now unit. As noted above, Plaintiff alleges that while in the Start Now unit, he received little to no mental health treatment. He also asserts that he must be handcuffed whenever removed from his cell, that he is not allowed to use the gym for exercise, and that he is not allowed to clean his cell properly. Throughout his amended complaint, Plaintiff alleges that his continued

14

placement in the Start Now unit has aggravated his mental illness. Plaintiff alleges that he notified Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka about his mental illnesses and his aggravated symptoms, to no avail. (Am. Compl., ECF No. 5, PageID.113.)

First, while Plaintiff equates the Start Now unit to segregation, placement in segregation, without more, is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347). Here, Plaintiff broadly asserts that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka subjected him to prolonged solitary confinement. However, Plaintiff alleges no specific facts describing the involvement of Defendants Washington, Bush, and Heydens, who are MDOC officials employed in Lansing, in his initial placement in the unit or in the decision to keep Plaintiff in the Start Now unit at ICF. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Because Plaintiff does not allege facts suggesting that Defendants Washington, Bush, and Heydens had any active involvement with Plaintiff's detention in the Start Now unit, his Eighth Amendment claims against them will be dismissed. See *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

As to ICF Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka, Plaintiff alleges that these individuals were aware of Plaintiff's serious mental health issues, but continued to house him in a restrictive segregation setting for a period of more than a year and a half. Although Plaintiff has by no means proven his Eighth

15

Amendment claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment claim regarding Plaintiff's continued detention in segregation-like conditions against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka. *Cf. J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 719 (6th Cir. 2020) ("Placement of a mentally-ill detainee in solitary confinement 'raises a genuine concern that the negative psychological effects of his segregation will drive him to self-harm.'" (citation omitted)); *Snider v. Saad*, No. 1:20-cv-963, 2020 WL 6737432, at *7–8 (W.D. Mich. Nov. 17, 2020) (concluding that the prisoner-plaintiff's Eighth Amendment claim against members of the SCC regarding his conditions of confinement, which he alleged were more severe than typical conditions of segregation, and which he alleged had a particularly "deleterious impact on him" due to his mental illness, could not be dismissed on initial review).

### b.    Denial of Secure Pak Access

Plaintiff also contends that Defendant Unknown Parties named as Unknown ICF Staff violated his Eighth Amendment rights by "depriving [Plaintiff] of access to basic necessities when blocking Secure Pak access." (Am. Compl., ECF No. 5, PageID.120.) Plaintiff alleges that Secure Paks are ordered by his family and friends and that this was blocked due to his placement in Start on January 6, 2023. Plaintiff avers that he "had no other means to obtain [hygiene], medication, shower shoes[,] or dietary supplements." (*Id.*, PageID.112.)

Plaintiff's conclusory allegations are insufficient to set forth an Eighth Amendment claim against Defendant Unknown Parties named as Unknown ICF Staff. Per the MDOC's website, the Secure Pak program, also referred to as the Friends and Family program, "is a Department-approved customized package program that allows family members and others to send authorized

items to prisoners while safeguarding against the introduction of contraband." *See* https://www.

michigan.gov/corrections/for-families/family-and-friends-securepak-program-how-it-works  (last

visited Oct. 29, 2024). Prisoners are also permitted to directly order Secure Paks themselves. *Id.*

However, prisoners in segregation are not eligible to receive Secure Paks. *Id.* Per MDOC policy,

Start Now units are alternatives to administrative segregation. *See* Director's Office Memorandum

(DOM) 2024-4 (eff. Jan. 1, 2024). Placement in segregation, without more, is a routine discomfort

that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*,

503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Thus, any denial of privileges as a result of

Plaintiff's placement in the Start Now unit cannot establish an Eighth Amendment violation. *See*

*Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795

(6th Cir. 2008).

While Plaintiff was denied Secure Paks while in the Start Now unit, he does not set forth

sufficient *facts* from which the Court could conclude that he was denied basic human needs and

requirements. Plaintiff states in a conclusory manner that he had no other means to obtain hygiene

items, medication, shower shoes, or dietary supplements. However, Plaintiff fails to allege any

facts suggesting that the shower shoes and dietary supplements are akin to basic human necessities.

Furthermore, while hygiene items and medications can certainly qualify as basic human

necessities, Plaintiff provides no facts regarding how long he had no access to these items. Denial

of such items for short periods of time constitute temporary inconveniences that do not rise to the

level of an Eighth Amendment violation. *See, e.g.*, *Matthews v. Murphy*, No. 90-35458, 1992 WL

33902, at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of

a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately

34 days did not rise to the level of a constitutional violation); *Crump v. Janz*, No. 1:10-cv-583,

2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (concluding that the denial of a toothbrush and toothpaste for 35 days constituted a mere temporary inconvenience); *Robertson v. McRay*, No. 03-22823-CIV, 2006 WL 2882502, at *7 (S.D. Fla. July 28, 2006) (finding that the failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment). Moreover, Plaintiff alleges no harm or risk of harm from his failure to receive these items. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (holding that a 49-day denial of a comb, deodorant, and cleaning supplies, none of which jeopardized the prisoner-plaintiff's health, failed to satisfy the objective component of an Eighth Amendment claim). Accordingly, for the reasons set forth above, Plaintiff's Eighth Amendment claim against Defendant Unknown Parties named as Unknown ICF Staff will be dismissed.

### 4.    Fourteenth Amendment

Plaintiff also contends that Defendants Washington, Bush, Heydens, Davids, Bonn, Browkaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranks violated his Fourteenth Amendment rights by placing him in and continuing his detention in the Start Now unit. Specifically, Plaintiff alleges that all these Defendants violated his due process rights by forcing him to "remain in segregation past 7 days without a hearing for over 6 months," and that they violated his equal protection rights by depriving him of "general population privileges, school[,] and work programming." (Am. Compl., ECF No. 5, PageID.121.) Plaintiff also contends that Defendant Unknown Parties named as Unknown ICF Staff violated his equal protection rights by depriving Plaintiff "of basic necessities from the prison store/Secure Paks while allowing similarly situated prisoners to order those items." (*Id.*, PageID.120.)

18

#### a.      Procedural Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was involuntarily placed in and continuously detained in ICF's Start Now unit. Plaintiff, however, does not allege that his placement in the Start Now unit affected the duration of his sentence. Moreover, as explained below, Plaintiff has failed to allege facts to suggest that the Start Now program is an atypical and significant deprivation.

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Furthermore, as noted above, Plaintiff describes the Start Now program at ICF as akin to administrative segregation. With respect to an inmate's detention in segregation, generally only periods of segregation lasting for a year or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Here, Plaintiff suggests that he has been in the Start Now unit for more than a year and a half. Although the length of Plaintiff's placement in the Start Now unit invariably implicates a liberty interest under the authority set forth above, Plaintiff fails to allege sufficient facts to suggest that his placement there is an atypical and significant deprivation. *See, e.g.*, *Jackson v. Berean*, No. 1:18-cv-1075, 2019 WL 1253196, at *11 (W.D. Mich. Mar. 19, 2019) ("[The Start program], which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship."), *aff'd*, No. 19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019); *Dickerson v. Davids*, No. 1:21-cv-401, 2021 WL 3928667, at *4 (W.D. Mich. Sept. 2, 2021).

In any event, even though Plaintiff suggests that he was forced to "remain in segregation past 7 days without a hearing for over 6 months" (Am. Compl., ECF No. 5, PageID.121), Plaintiff

also acknowledges that 30-day reviews regarding inmates' placement in the Start Now unit occur. (*Id.*, PageID.119.) While Plaintiff suggests that these reviews are not effective, he does not set forth facts suggesting that his continued placement in the Start Now unit has never been reviewed. Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris*, 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559–60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

Plaintiff fails to allege any specific facts regarding the nature of his mental illness, other than to say that he was prescribed medications for symptoms which "persuade acts of physical engagement." (Am. Compl., ECF No. 5, PageID.114.) However, Plaintiff asserts that the Start Unit targets prisoners who have a serious mental illness, would otherwise be subject to extended administrative segregation placement, and would benefit from placement in the Start Unit based on their disruptive behavior and suggests that he was placed in the Start Unit because he met this criteria. (*Id.*, PageID.115.) Furthermore, as noted above, Plaintiff does not set forth facts

21

suggesting that he was not regularly evaluated for release after the initial 6-month period about which he complains. Accordingly, for the reasons set forth above, the Court will dismiss Plaintiff's Fourteenth Amendment procedural due process claims.

### b.    Substantive Due Process

To the extent that Plaintiff intended to raise substantive due process claims, he fails to state such claims. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, Plaintiff fails to set forth any facts from which the Court could infer conduct that is sufficiently outrageous to support a substantive due process claim. While it is clear that Plaintiff disagrees with his placement in the Start Now program, his allegations fall short of showing the sort of egregious conduct that would support a substantive due process claim. Accordingly, any intended substantive due process claims against Defendants will also be dismissed.

### c.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim,

Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff suggests that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka violated his equal protection rights by depriving him of "general population privileges, school[,] and work programming." (Am. Compl., ECF No. 5, PageID.121.) Plaintiff also contends that he was deprived of the gym, law library access, Secure Paks, and items purchased from the prisoner benefit fund—all privileges that are enjoyed by general population inmates. He also suggests that Defendant Unknown Parties named as Unknown ICF Staff violated his equal protection rights by allowing similarly situated inmates to order Secure Paks but blocking Plaintiff's access to them. (*Id.*, PageID.120.) Plaintiff's own allegations, however, fail to suggest that general population inmates are similar to inmates in the Start Now unit in all relevant aspects. Likewise, Plaintiff fails to set forth facts suggesting that those inmates who were allowed to order Secure Paks were similar to Plaintiff in all relevant aspects. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim

under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

### B.    ADA Claims

Plaintiff also contends that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka violated his rights under the ADA, 42 U.S.C. §§ 12101 *et seq.*, by "discriminating, excluding[,] and denying Plaintiff" several privileges and programming while in the Start Now unit. (Am. Compl., ECF No. 5, PageID.122.) Specifically, Plaintiff claims that he has been denied these various privileges and programs because of his mental illness. (*Id.*)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998). The proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff names each of the Defendants in their personal and official capacities. Because Plaintiff may not pursue ADA claims against Defendants in their personal capacities, any such claims will be dismissed.

24

As to Plaintiff's official capacity claims, the State of Michigan, acting through the MDOC, is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

Turning to the merits of Plaintiff's ADA claims, as noted above, Plaintiff suggests that mentally ill inmates, including himself, in the Start Now program are not provided various programs and services because of their mental disabilities. At this stage of the proceedings, taking Plaintiff's factual allegations in the light most favorable to him, the Court concludes that Plaintiff's ADA official capacity claims may not be dismissed on initial review.

However, the courts have recognized that, where an entity is named as a defendant, official capacity claims against employees of the entity are redundant. *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (finding official capacity suits against defendant agency's employees superfluous where the state and agency were also named as defendants); *see also Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 332, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.") (citing *Foster*); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against [Sheriff] Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself."), *abrogated on other grounds by Twombly*, 550 U.S. at 561–62, and *Iqbal*, 556 U.S. at 679. Likewise, Plaintiff's official capacity claims against

Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka are redundant of one another because each constitutes an identical suit against the MDOC or the State of Michigan for a violation of the ADA. *See Foster*, 573 F. App'x at 390 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The Court, therefore, will allow Plaintiff's official capacity claim under the ADA only against Defendant Washington as the highest ranking official. Accordingly, Plaintiff's official capacity ADA claims against Defendants Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka will be dismissed.

### C.    PAIMI Act Claims

Plaintiff also contends that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka violated the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, by placing him in the Start Now Unit. (Am. Compl., ECF No. 5, PageID.120.) The PAIMI Act "assists States in the creation of a system of protection and advocacy for individuals with mental illness." *Jennings v. Bennett*, No. 1:17-cv-555, 2017 WL 3712176, at \*12 (W.D. Mich. Aug. 29, 2017) (citing 42 U.S.C. § 10801). The Act does authorize legal actions. *See* 42 U.S.C. § 10807. However, the Act does not authorize the mentally ill individuals to bring such an action; instead, it authorizes actions by the systems, agencies, or organizations created by PAIMI to protect and advocate for those suffering from mental illness. *Id.*; *see also Sardakowski v. Ivandick*, 653 F. App'x 596, 597 (10th Cir. 2016) (affirming district court's dismissal as frivolous a private action under PAIMI); *Lawson v. Nat'l Church Residencies*, No. 5:15-cv-332, 2016 WL 2643155, at \*2 (N.D. Fla. Apr. 6, 2016) ("PAIMI does not create an enforceable private right of action."), *R. & R. accepted and adopted*, 2016 WL 3566856 (N.D. Fla. June 27, 2016); *Darnell v. Jones*, No. CIV-12-1065, 2014 WL 4792144, at \*3 n.4 (W.D. Okla. Sept. 24, 2014) ("PAIMI Act authorizes certain protection and advocacy systems to bring suit

regarding access to patient records; its provisions do not provide a private cause of action to" a plaintiff who is an inmate) (citations omitted), *aff'd*, 610 F. App'x 720 (10th Cir. 2015); *Romeo v. Aid to Developmentally Disabled, Inc.*, No. 11-CV-6340, 2013 WL 5532649, at *2 (E.D.N.Y. Oct. 3, 2013) (granting motion to dismiss on ground that the individual defendants were "not state actors" for purposes of 42 U.S.C. §§ 1983, 1985, 1986, and "that PAIMI create[d] no privately enforceable federal rights"); *Burke v. North Dakota Dep't Corr. & Rehab.*, No. 1:07-cv-4, 2007 WL 1456217, at *8 (D.N.D. May 16, 2007) (language of PAIMI "reveals no intent on the part of Congress to provide private remedy to review individual decisions of the protection and advocacy organizations regarding whether to provide services to particular individuals"). Accordingly, for the reasons noted above, Plaintiff's PAIMI Act claims against Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka will be dismissed.

### D.    RICO Claims/Embezzlement

Plaintiff also suggests that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka violated his rights under the RICO Act, 18 U.S.C. §§ 1961 *et seq.*, by "using the Start program as a front to embezzle funds from the federal government through the PAIMI Act while depriving Plaintiff of treatment and benefits." (Am. Compl., ECF No. 5, PageID.122.)

Plaintiff does not state upon which provision of RICO he bases his claims. However, § 1964(c) of the RICO Act provides for a private cause of action and states:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Section 1962 makes it illegal to engage in a pattern of racketeering activity. 18 U.S.C. § 1962(c). "Racketeering activity" is defined in § 1961(1) in terms of a long list of federal and state crimes, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period, 18 U.S.C. 1961(5), generally referred to as the "predicate acts" or "predicate offenses" underlying the RICO claim.

The Sixth Circuit and other federal courts consistently have rejected RICO claims concerning prison conditions. *See, e.g.*, *Lee v. Michigan Parole Bd.,* 104 F. App'x 490, 493 (6th Cir. 2004) (affirming dismissal of conclusory RICO claim because plaintiff alleged no injury to his business or property); *Looper v. Gibson,* 63 F. App'x 877, 878 (6th Cir. 2003) (same); *Ziegler v. McGinnis*, 32 F. App'x 697, 699 (6th Cir. 2002) (finding no RICO claim based on MDOC telephone policy); *Hyland v. Martin*, No. 00-1269, 2000 WL 1647952, at *1 (6th Cir. Oct. 25, 2000) (affirming dismissal of prisoner RICO conspiracy claim regarding restrictions imposed on photocopying credit card); *see also Jenkins v. C.S.C./C.C.C.F. Corr. Services Corp.*, No. 99-1518, 2000 WL 1179772, at *1 (10th Cir. Aug. 21, 2000) (dismissing prisoner RICO claim alleging embezzlement from inmate accounts); *Petersen v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (affirming dismissal of RICO claims alleging warden accepted bribes from prison food services company); *Taylor v. Ornoski*, No. C 06-2224 MMC (PR), 2006 WL 1646148, at *2 (N.D. Cal. June 14, 2006) (dismissing prisoner RICO claims seeking to challenge regulations restricting vendors who provide telephone service to inmates).

Here, Plaintiff's suggestion that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka violated RICO is no more than a conclusory assertion. Plaintiff fails to identify predicate acts upon which to base a

RICO claim. *See Iqbal*, 556 U.S. at 678–79 (requiring more than conclusory labels); *Twombly*, 550 U.S. at 555 (same). Moreover, Plaintiff cannot maintain RICO claims because he does not allege any injury to business or property, which is a prerequisite for a successful civil RICO claim. *See* 18 U.S.C. § 1964(c); *Ziegler*, 32 F. App'x at 699; *see also Lee*, 104 F. App'x at 493; *Looper*, 63 F. App'x at 878. Accordingly, Plaintiff's RICO claims will be dismissed.

Furthermore, with respect to Plaintiff's reference to embezzlement, embezzlement is a crime under federal or state law and is not a private cause of action. *Cf. Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, No. 05-CV-73709-DT, 2007 WL 2710113, at *10 (E.D. Mich. Sept. 13, 2007) (discussing that although "in certain circumstances, [courts may] infer a private cause of action, where there is a bare criminal statute, with no indication that civil enforcement is available, a private cause of action will not be inferred" and concluding that a claim for embezzlement alleges "violation of [a] purely criminal statute[ ]" (citations omitted)); *Stern v. Epps*, 464 F. App'x 388, 393 (5th Cir. 2012) ("Embezzlement and money laundering are crimes under Mississippi law, not private causes of action." (citations omitted)). Accordingly, any intended embezzlement claims will also be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Simon, Bush, Heydens, and Unknown Parties named as Unknown ICF Staff will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, the following claims against Defendants Washington, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka: (1) Plaintiff's First Amendment retaliation claims; (2) Plaintiff's Eighth Amendment claim against Defendant Washington; (3) Plaintiff's Fourteenth Amendment due process and equal protection claims; (4) Plaintiff's ADA claims against Defendants Davids, Bonn,

Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka; (5) Plaintiff's PAIMI Act claims; and (6) Plaintiff's RICO Act/embezzlement claims.

The following claims remain in the case: (1) Plaintiff's Eighth Amendment claims against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Shafer, Norton, Bookie, and Maranka; and (2) Plaintiff's ADA claim against Defendant Washington.

An order consistent with this opinion will be entered.


Dated: November 1, 2024                    /s/ Hala Y. Jarbou
                                           HALA Y. JARBOU
                                           CHIEF UNITED STATES DISTRICT JUDGE