UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL BUSH,

        Plaintiff,

v.

HEIDI WASHINGTON, *et al.*,

        Defendants.

_____/

Case No. 1:24-cv-947

Hon. Hala Y. Jarbou

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action by plaintiff Samuel Bush, a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff filed an amended complaint (ECF No. 5) which included claims brought pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (ADA), the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.* (PAIMI), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*. (RICO). See Opinion (ECF No. 6, PageID.135). The alleged incidents occurred at the MDOC's Ionia Correctional Facility (ICF).

On initial review of the amended complaint, the Court dismissed plaintiff's claims against defendants Simon, Bush, Heydens, Unknown Parties (referred to as ICF staff). *See* Opinion (ECF No. 6) and Order (ECF No. 7).

The following claims remain in the case: (1) plaintiff's Eighth Amendment claims against defendants ICF Warden Davids, ICF Deputy Warden Bonn, ICF Assistant Deputy Warden (ADW) R. Brokaw, ICF ADW J. Dunigan, ICF Residential Unit Manager (RUM) Luther, ICF PC Walton L. Smith, ICF Psychiatrist Saad, ICF Psychiatrist Shafer, ICF Psychologist/Social Worker

1

Michelle Norton, ICF Psychologist Bookie, and ICF Unit Chief Maranka; and (2) plaintiff's ADA claim against defendant MDOC Director Heidi Washington. Opinion at PageID.131.

This matter is now before the Court on two motions (ECF Nos. 25 and 29). First, defendants Washington, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Norton, Bookie, and Maranka (collectively the "MDOC Defendants") filed a motion for summary judgment based on exhaustion (ECF No. 25). Second, defendants Hanna Saad, M.D. and Tracy Shafer, N.P. filed a combined "Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative for summary judgment for failure to exhaust administrative remedies" (ECF No. 29). Plaintiff did not oppose the motions.

**I.    Background**

Plaintiff's amended complaint involves his time spent in the Start Now Unit. Opinion at PageID.132. As this Court explained,

> The mission statement for the MDOC Start Units reads as follows: "To provide a secure general population alternative to administrative segregation while providing programming and other structured and unstructured out of cell activities based upon the prisoner's positive adjustment, with the goal of reintegration into traditional general population." *See, e.g., Randall v. Washington*, No. 1:24-cv-344, 2024 WL 3158258, at *2 (W.D. Mich. June 25, 2024); *Miller v. Davids*, No. 1:20-cv-108, 2022 WL 329844, at *9 (W.D. Mich. Jan. 6, 2022).

*Id*. at fn. 1.

It appears that plaintiff was placed in ICF's Start Now Unit on January 6, 2023. *Id.* at PageID.132. "Plaintiff alleges that on January 6, 2023, and December 7, 2023, he was deprived of basic necessities such as toothpaste, deodorant, soap, and over-the-counter medications as a result of being deprived of Secure Pak access." *Id*.

Plaintiff states that Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer, Norton, Bookie, and Maranka are the Start Program Coordinators and that he notified each of them of the unconstitutional conditions on March 22, 2023, and December 10, 2023. Plaintiff

2

> states that he was held in segregation for more than seven days (nearly two years) and because he is mentally ill, he experienced increased depression, anxiety, sleep problems, paranoia, nightmares, memory loss, anger, thoughts, suicidal ideation, and decompensation. Plaintiff also asserts that he suffered from weight loss and delirium from engaging in hunger strikes to protest his placement in the Start program.

*Id*. at PageID.133 (internal citations omitted)..

Among other things, plaintiff alleged that he was diagnosed with several mental disorders and that he was placed in the Start Now Program in retaliation for filing grievances. *Id*. Plaintiff claims that the Start Program "is falsely portrayed as a mental health program in order to receive 'additional public funds and funds from philanthropist organizations.'" *Id*. "Plaintiff states that conditions in the program include management according to segregation standards, with minor store and J-Pay privileges in certain stages of the program" and "that there are no programs provided in the Start Unit that he could not receive in the general population." *Id*.

> Plaintiff contends that the Start Now program is unconstitutional because it "denies religious services, clean environment, law library access, . . . exaggerate[s] programming[,] and create[s] mental illnesses." Plaintiff claims that inmates in the program are "treated sadistically and maliciously under the belief [they] are too mentally ill to navigate through the courts." Plaintiff "is not allowed to clean his cell properly and sometimes not at all." He contends that he must be escorted to the shower and yard cages in handcuffs, and "is fed in his filthy cell." Plaintiff is not allowed to go to the gym for exercise. He "is required to attend SCC reviews monthly like all other [administrative segregation] prisoners." He suggests that the Start Now program "is merely a front to hold Plaintiff in segregation indefinitely."

*Id*. at PageID.134 (internal citations omitted).

## II.     Motion to dismiss

Defendants Dr. Saad and N.P. Shafer moved to dismiss the amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court conducted an initial review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e(c), to determine whether it is frivolous, malicious, fails to state a claim upon which relief

3

can be granted or seeks monetary relief against a defendant that is immune from such relief. *See* Opinion (ECF No. 6). Upon this initial review, the Court concluded that the amended complaint was not subject to dismissal for any of the reasons listed above and that it stated Eighth Amendment claims against Dr. Saad and N.P. Shafer. *See* Opinion at PageID.137-138, 141-144, 157-158. In reaching this conclusion, the Court determined that,

> Although Plaintiff has by no means proven his Eighth Amendment claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment claim regarding Plaintiff's continued detention in segregation-like conditions against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Saad, Schafer [sic], Norton, Bookie, and Maranka.

*Id.* at PageID.143-144. There is no reason for the Court to perform a second review of plaintiff's allegations. Accordingly, Dr. Saad and N.P. Shafer's motions to dismiss should be denied.[1]

### III. Summary Judgment

#### A. Legal standard

Defendants have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[1] In reaching this determination, the Court notes that defendants Dr. Saad and N.P. Shafer did not ask the Court to reconsider the screening opinion. *See* Saad and Shafer Brief (ECF No. 29, PageID.272-273).

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Plaintiff did not file a responsive brief as required by W.D. Mich. LCivR 7.2(c) which requires that "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials". "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.[2]

---

[2] The Court notes that plaintiff included a "verification" at the end of his complaint, presumably so that it could serve as supporting material for a response to a motion for summary judgment. *See* Amend. Compl. at PageID.128; *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). Here, there are no verified allegations which address the

5

B.    **Lack of Exhaustion**

1.    **Exhaustion requirement**

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

2.    **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware

---

exhaustion issues raised in defendants' briefs. Even if plaintiff had included some facts regarding exhaustion, it is not the function of this Court to create legal arguments for plaintiff to respond to defendants' motion. "The Court's role is adjudicatory; it is not an advocate." *Burley v. Miller*, 241 F. Supp. 3d 828, 840 (E.D. Mich. 2017).

of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### C.    Discussion

#### 1.    MDOC Defendants

There is no evidence that plaintiff Bush exhausted any grievances before filing this complaint. The Clerk's Office docketed the original complaint as filed on September 6, 2024. *See* Comp. (ECF No. 1).[3] The MDOC Defendants point out that plaintiff did not pursue any Step III grievances from January 1, 2018 through November 8, 2024. *See* MDOC Prisoner Step III

---

[3] The Court notes that under the prison mailbox rule, a prisoner's court papers are deemed filed at the time he "delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). "Under this relaxed filing standard, a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (internal citations omitted). Based on the prison mailbox rule, plaintiff's lawsuit was filed long before September 6, 2024. The complaint was postmarked on September 4, 2024 (PageID.66) and the co-plaintiffs signed the complaint months before that date. For example, plaintiff Bush signed his "verification" on December 12, 2023. PageID.59. The first named co-plaintiff, Alerilio Evans, signed a "verification" on September 21, 2023 (PageID.47) and then signed the complaint again on December 4, 2023 (PageID.46).

Grievance Report (ECF No. 26-4). In short, there is no evidence that plaintiff exhausted a grievance against the MDOC Defendants before filing this lawsuit. *See* 42 U.S.C. § 1997e(a). Based on this record, plaintiff did not properly exhaust a grievance to support his claims against any of the MDOC Defendants. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, MDOC Defendants Washington, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Norton, Bookie, and Maranka's motion for summary judgment should be granted.

### 2. Defendants Dr. Saad and N.P. Tracy Shafer

Defendants Dr. Saad and N.P. Shafer also seek summary judgment on the basis of exhaustion. These defendants also pointed out that plaintiff did not file any grievances during the relevant time period. These defendants presented a copy of plaintiff's MDOC Prisoner Step III Grievance Report from January 1, 2019 through June 30, 2025 (ECF No. 29-1).[4] Based on this record, plaintiff did not properly exhaust any grievances against Dr. Saad or N.P. Shafer. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants Saad and Shafer's motion for summary judgment should be granted.

### IV. Recommendation

For these reasons, I respectfully recommend that defendants Washington, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Norton, Bookie, and Maranka's motion for summary judgment (ECF No. 25) be **GRANTED** and that they be **DISMISSED** from this action.

I further recommend that defendants Saad and Shafer's motion to dismiss (ECF No. 29) be **DENIED**.

---

[4] The Court notes that defendants Dr. Saad and N.P. Shafer presented the MDOC Prisoner Step III Grievance Report in a different format from the MDOC defendants. However, both documents reflect that plaintiff did not file any grievances through Step III before filing this lawsuit.

I further recommend that defendants Saad and Shafer's motion for summary judgment (ECF No. 29) be **GRANTED** and that they be **DISMISSED** from this action.

I further recommend that this lawsuit be **DISMISSED**.


Dated: January 5, 2026                                /s/ Ray Kent
                                                      RAY KENT
                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).